[No. A058704. First Dist., Div. Two. Aug. 2, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
PIERRE B. MADISON, Defendant and Appellant.

**COUNSEL**

Mark W. Plank, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan M. Helfman and Violet M. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KLINE, P. J.**—Pierre B. Madison appeals from an order imposing a previously suspended four-year prison term after appellant's exclusion from the California Rehabilitation Center. He contends the trial court erred in calculating his credits for time served.

## STATEMENT OF THE CASE

Appellant was committed to the California Rehabilitation Center (CRC) after pleading guilty to a charge of selling cocaine.[1] He was received at CRC on October 31, 1991. On April 22, 1992, he was excluded from CRC due to his excessive criminality and the case was referred back to the trial court pursuant to Welfare and Institutions Code section 3053. He was incarcerated at the California Institution for Men/Reception Center Central (CIM), in Chino, from April 22 to June 24, on which date he was transferred to San Quentin.

On July 27, the court imposed the four-year prison sentence that had been suspended when appellant was committed to CRC. On July 28, the court filed an order granting appellant a total of 347 days' credit for time served: 291 for actual days served plus 56 days' conduct credit. Appellant filed a timely notice of appeal on July 28, 1992.

## DISCUSSION

Appellant was awarded credit for time served as follows: For the period August 11, 1991, to October 31, 1991, 82 days' credit plus 40 days' conduct credit; for the period October 31 to April 22, 1992 (at CRC), 174 days' credit; for the period June 24 to July 28 (at San Quentin), 35 days' credit plus 16 days' conduct credit. Appellant contends the trial court erred in failing to give him credit for the time he served at CIM or conduct credits for the time he spent at CRC and at CIM. According to appellant, he is entitled to an additional 181 days' credit.

Respondent agrees that the court erred in failing to credit appellant for the time served at CIM. Appellant was transferred to CIM on April 22, 1992, and then to San Quentin on June 24, 1992. Accordingly, he is entitled to an additional 63 days of actual custody credits.

Respondent further agrees that appellant is entitled to conduct credits for the time spent at CIM. ■ Under Penal Code section 4019, subdivision (f), "a term of six days will be deemed to have been served for every four days spent in actual custody."[2] Accordingly, "conduct credits are to be given for sets of four days' actual time served, with no credit for anything less. A

---

[1] The commitment order was affirmed on appeal after appellant's attorney filed a *Wende* (*People* v. *Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]) brief.

[2] All further statutory references are to the Penal Code unless otherwise specified.

Section 4019, subdivision (b), provides that "for each six-day period in which a prisoner is confined in or committed to a facility as specified in this section, one day shall be deducted from his or her period of confinement unless it appears by the record that the prisoner has

residual set of fewer than four days may not be 'rounded up.' " (*People* v. *Gutierrez* (1991) 232 Cal.App.3d 1571, 1573 [284 Cal.Rptr. 211].) Custody credits are calculated by dividing the number of actual days custody by four and multiplying the result (excluding any remainder) by two. (*People* v. *Bravo* (1990) 219 Cal.App.3d 729, 735 [268 Cal.Rptr. 486].) Since appellant was incarcerated at CIM for 63 days, he is entitled to 30 days' conduct credit under section 4019.

▇▇▇ The only disputed issue on this appeal is whether appellant is entitled to conduct credit for the time he served at CRC. Respondent initially took the position that while appellant was not entitled to conduct credit under other statutes,[3] he was entitled to "good behavior and participation credits" under section 2931. This position is untenable, however, because section 2931, subdivision (d), provides that "[t]his section shall not apply to any person whose crime was committed on or after January 1, 1983."

In response to this court's request for further briefing on the issue, respondent acknowledges that section 2931 does not apply to the present case. Appellant implicitly acknowledges the inapplicability of section 2931 but asserts he is entitled to credit under section 2933. Section 2933 provides: "It is the intent of the Legislature that persons convicted of a crime and sentenced to state prison, under Section 1170, serve the entire sentence imposed by the court, except for a reduction in the time served . . . for performance in work, training or education programs established by the Director of Corrections." Section 2933 was enacted in 1982, at the same time subdivision (d) was added to section 2931. (Stats. 1982, ch. 1234, §§ 2, 4, pp. 4549, 4551.) According to the Summary Digest for the 1982 legislation, the legislative intent was for only "worktime" and not "good behavior and participation" credits to be available for offenses committed after January 1, 1983. (Stats. 1982, ch. 1234, Summary Dig., p. 427.)

Cases which have found defendants entitled to conduct credits for time spent at CRC have done so upon an analysis based on Welfare and Institutions Code section 3201. That statute provides that a person may not be

---

refused to satisfactorily perform labor as assigned by the sheriff, chief of police, or superintendent of an industrial farm or road camp." Subdivision (c) provides that for each six-day period of confinement, one day shall be deducted "unless it appears by the record that the prisoner has not satisfactorily complied with the reasonable rules and regulations established by the sheriff, chief of police, or superintendent of an industrial farm or road camp."

[3]Respondent claimed appellant was not entitled to conduct credit under section 4019 (see *People* v. *Moore* (1990) 226 Cal.App.3d 783, 785 [277 Cal.Rptr. 82] [conduct credit authorized under § 4019, subd. (a)(3), only for prisoners " 'confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm or road camp . . .' " and not for prisoners in nonpenal institutions]) or to "worktime" credit under section 2933. (*People* v. *Williams* (1991) 232 Cal.App.3d 1643 [284 Cal.Rptr. 241] [CRC committee not entitled to "worktime" credit under section 2933].)

confined in CRC for a period exceeding that which he or she would otherwise have spent in prison if the sentence had been executed, "including application of good behavior and participation credit provisions of Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 of Part 3 of the Penal Code . . . ." (Welf. & Inst. Code, § 3201, subd. (c).) Although Welfare and Institutions Code section 3201 does not provide for conduct credits when a defendant is excluded from CRC prior to service of his or her full term and the prison sentence is then executed, case law has determined that principles of equal protection require conduct credit for time spent at CRC be given under these circumstances. (*In re Huffman* (1986) 42 Cal.3d 552, 559 [229 Cal.Rptr. 789, 724 P.2d 475]; *In re Martin* (1981) 125 Cal.App.3d 896, 900-903 [178 Cal.Rptr. 445].)

Welfare and Institutions Code section 3201, subdivision (c), specifically refers to "good behavior and participation credit" under "Article 2.5 (commencing with Section 2930) of Chapter 7 of Title 1 or Part 3 of the Penal Code." Within the specified article 2.5 of the Penal Code, section 2931 is the statute that provides for "good behavior and participation credits." While section 2933 is presently also a part of article 2.5, that section deals with "worktime," not "good behavior and participation" credits. Moreover, at the time the critical language of Welfare and Institutions Code section 3201, subdivision (c), was adopted in 1980 (Stats. 1980, ch. 822, § 8, p. 2588), section 2933 had not yet been enacted. (Stats. 1982, ch. 1234, § 4, p. 4551.) Accordingly, the conduct credit that must be allowed under Welfare and Institutions Code section 3201 for time spent at CRC is that amount of credit provided for in section 2931.

Appellant acknowledges two of the cases that have held work time credit under section 2933 is not available for time spent at CRC. (*People v. Miller* (1991) 233 Cal.App.3d 1551 [285 Cal.Rptr. 410]; *People v. Williams, supra,* 232 Cal.App.3d 1643.) Both *Miller* and *Williams* rely upon *In re Mabie* (1984) 159 Cal.App.3d 301 [205 Cal.Rptr. 528], which reached the same conclusion on review of a CRC inmate's complaint that denial of section 2933 work time credits violated his right to equal protection. *Mabie*'s conclusion that the Legislature did not intend to provide section 2933 work time credits to CRC committees was based on the fact that Welfare and Institutions Code section 3201, subdivision (c), refers to "good behavior and participation" credit. The court stated: "Interpreting a later amendment of another section which authorizes *worktime* credit as included in the good behavior and participation credit would obfuscate the distinction between two separate concepts." (159 Cal.App.3d at p. 306, italics in original.) *Mabie* further noted that there had been no amendment of Welfare and Institutions Code section 3201 to authorize section 2933 work time credits for CRC

inmates. Finally, *Mabie* rejected the argument that denying section 2933 credit to CRC inmates denied them equal protection, finding a compelling justification for limiting section 2933 credits to prison inmates. ▮ As *Mabie* explained, the express intent of the Legislature in enacting section 2933 was to motivate prison inmates to work and instill in them a healthy work ethic that would improve their chances for reintegration into society. (159 Cal.App.3d at p. 308.) By contrast, since CRC inmates' fundamental problem is addiction, the most likely prospect for their reintegration into society lies in treatment. (*Ibid.*) "Since addiction is the root of the problem, the Legislature apparently determined that worktime credit would not foster effective treatment." (*Ibid.*)

In *People* v. *Williams, supra,* we followed *Mabie* in a case in which the defendant had been paroled from CRC and subsequently sentenced to prison when proceedings were reinstated in connection with proceedings on new offenses. We noted that "[a]lthough the Legislature amended section 2933 in 1986, and again in 1988, it made no effort to include CRC committees within the scope of the statute, despite *Mabie*'s extant holding that denied CRC committees credit under that provision." (232 Cal.App.3d at p. 1647.)

In *People* v. *Miller, supra, Mabie*'s reasoning was again applied, this time to a defendant who—like appellant in the present case—was excluded from CRC. *Miller* specifically rejected the argument raised in appellant's letter brief that denial of section 2933 work time credits to a defendant excluded from CRC works a denial of equal protection. The court stated: "Appellant attempts to distinguish the holding in *Mabie* from his situation because appellant was excluded from CRC (Welf. & Inst. Code, § 3053). The attempted distinction is without merit. Essentially, the distinction raises a question of whether the length of time actually served at CRC has any bearing on the above equal protection analysis as between a CRC committee and a state prisoner sentenced for the same offense. We see none. The factual distinction is without legal significance. Whatever the length of time actually served at CRC, the distinction between punishment for a crime and treatment and rehabilitation for narcotics addiction is valid and justifies the denial of worktime credits to appellant." (233 Cal.App.3d at pp. 1555-1556; see also *People* v. *Abdullah* (1992) 6 Cal.App.4th 1728, 1733-1734 [9 Cal.Rptr.2d 131] [no credit under § 2933 for inmate excluded from CRC].) We find no reason to depart from the reasoning of these cases. Appellant is not entitled to work time credit under section 2933.

▮ Since the only conduct credit to which CRC inmates are entitled is that available under section 2931, but section 2931 is expressly inapplicable to offenses committed on or after January 1, 1983, it appears that no such

credit is available to CRC inmates such as appellant, whose offenses were committed after that date. We must give effect to the unequivocal language of section 2931, subdivision (d); if the Legislature did not intend to remove all conduct credit for time served at CRC for offenses committed on or after January 1, 1983, only the Legislature can clarify that intent.

Appellant is entitled to an additional 63 days' actual credit and 30 days' conduct credit for the time he spent at Chino. Adding these amounts to the trial court's calculations would result in actual custody credits of 354 days and conduct credit of 86 days. As respondent points out, however, the trial court erred in granting appellant 35 days' actual credit for the time spent at San Quentin from June 24 to July 28, 1992. The total of 35 days is reached by counting the days from June 24 to July 28, inclusive. Since credit for the date June 24 is included in the calculation of time served at CIM from April 22 to June 24, however, that date should not be counted twice and appellant's actual custody credits for the time at San Quentin should be 34 days. Appellant is thus entitled to actual custody credits of 353 days for his total time in custody (August 11, 1991, through July 28, 1992) plus conduct credits of 86 days, for a grand total of 439 days.

The order shall be modified to reflect credit for time spent in custody of 439 days, 353 days' actual time and 86 days' conduct credit, and as modified is affirmed.

Benson, J., and Phelan, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 12, 1993. Kennard, J., was of the opinion that the petition should be granted.